**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBIN E.,**

                **Plaintiff,**                5:18-cv-1112
                                                                    (GLS)

                v.

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Law Offices of Kenneth Hiller, PLLC      JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue, Suite 1A       KENNETH R. HILLER, ESQ.
Amherst, NY 14226

**FOR THE DEFENDANT:**
HON. GRANT C. JACQUITH              CANDACE LAWRENCE
United States Attorney                      Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Ellen E. Sovern
Regional Chief Counsel
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Robin E. challenges the Commissioner of Social Security's denial of Social Security Disability Insurance (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Robin's arguments, the Commissioner's decision is reversed and remanded for further administrative proceedings.

### II. Background

Robin applied for DIB and SSI benefits on September 19, 2014, alleging a disability beginning December 28, 2013.  (Tr.[1] at 75-76, 154-61.) When her applications were denied, (*id.* at 80-85), she requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 86-87), which was held on December 14, 2016, (*id.* at 41-54), and continued on May 1, 2017, (*id.* at 33-40).  On May 25, 2017, the ALJ issued a decision denying Robin's claims for DIB and SSI benefits, (*id.* at 7-24), which became the Commissioner's final determination upon the Social Security Administration

---

[1] Page references preceded by "Tr." are to the administrative transcript.  (Dkt. No. 8.)

Appeals Council's denial of review, (*id.* at 1-6).

Robin commenced the present action on September 17, 2018 by filing her complaint, wherein she seeks review of the Commissioner's determination. (Compl.) Thereafter, the Commissioner filed a certified copy of the administrative transcript. (Dkt. No. 8.) Each party filed a brief seeking judgment on the pleadings. (Dkt. Nos. 10, 12.)

### III. **Contentions**

Robin contends that: (1) "[t]he ALJ's Step 2 application of the [']Special Technique['] was overly broad and inconsistent with the legal standards [and] [t]he ALJ's arbitrary rejection of stress-related limitations was unreasoned and unsupported by the record"; (2) "[t]he ALJ failed to evaluate [Robin's] subjective complaints"; (3) "[t]he ALJ erred by failing to adopt any postural limitations . . . and the ALJ's finding of improvement is unsupported by substantial evidence"; and (4)"[t]he ALJ failed to meet the burden at Step 5 in finding work [Robin] could perform at the sedentary exertional level using only the skills acquired from her past work, and the ALJ failed to apply the appropriate legal standards." (Dkt. No. 10 at 1.) The Commissioner counters that "there is no merit to [Robin's] challenges" and "the ALJ's findings were proper and are supported by substantial

3

evidence."[2] (Dkt. No. 12 at 6, 13.)

## IV. Facts

The court adopts the parties' factual recitations to the extent they are consistent with the statement of facts contained in the ALJ's decision and supported by the medical record. (Tr. at 10-19; Dkt. No. 10 at 2-10; Dkt. No. 12 at 2-4.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of*

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) (internal quotation marks and citations omitted).

[3] The § 405(g) standard of review in DIB proceedings brought under Title II of the Act also applies to SSI proceedings under Title XVI of the Act. *See* 42 U.S.C. § 1383(c)(3). Similarly, the analysis of SSI claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to DIB claims under Title II. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Accordingly, although the regulatory sections cited herein are sections of Title II, the substance is found in both Title II and Title XVI.

4

*Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-*3 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Step Two Determination

First, Robin apparently contends that the ALJ erred by failing to find her mental impairments severe. (Dkt. No. 10 at 19.) The Commissioner counters, and the court agrees, that the ALJ's severity determination was free from legal error and supported by substantial evidence. (Dkt. No. 12 at 13.)

At step two of the sequential evaluation, an ALJ must decide whether a claimant has "severe impairments." 20 C.F.R. § 404.1520(a)(4)(ii). Severe impairments are those that significantly limit a claimant's physical or mental ability to do basic work activities. *Id.* § 404.1522(a). Consequently, "[a] finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (internal quotation marks and citations omitted).

When mental impairments are at issue, step two severity findings are

5

determined after applying a "special technique" set out in 20 C.F.R. § 404.1520a(b)-(e), which helps the ALJ determine whether a claimant has medically-determinable mental impairments and whether such impairments are severe. An ALJ first "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [those] findings." *Id.* § 404.1520a(b)(1). Next, they must assess the degree to which a claimant's impairments functionally limit his or her "ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 404.1520a(c)(2). To complete this assessment, the ALJ must "rate the degree of [claimant's] functional limitation" in four "broad" areas: (1) "[u]nderstand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* § 404.1520a(c)(3). The rating scale for these categories is a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4). An ALJ will generally conclude that mental impairments are not severe when a claimant receives a rating of "none" or "mild." *Id.* § 404.1520a(d)(1).

     Here, the ALJ determined that Robin suffered from mild limitations with respect to the first, second, and third functional areas, and no

limitation with respect to the fourth functional area. (Tr. at 14.) The ALJ based her determination on Robin's own reports and the opinion of consultative examiner Dr. Christina Caldwell. (*Id.*)

Dr. Caldwell opined that Robin "was cooperative with adequate social skills, overall presentation, and manner of relating," and that her "posture" and "eye contact" were normal and appropriate. (*Id.* at 14, 558.) Robin's speech was fluent, her voice was clear, and her language was adequately receptive and expressive. (*Id.* at 559.) Further, Dr. Caldwell opined that Robin's "attention and concentration were intact," her "memory skills were only mildly impaired," and "[h]er insight and judgment were fair." (*Id.* at 14, 559.) And although Robin's "affect was depressed and she was sobbing throughout the interview [with Dr. Caldwell], her thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia." (*Id.*) Indeed, Robin was "oriented to person, place, and time." (*Id.*)

Furthermore, Dr. Caldwell opined that Robin "did not evidence limitation in [her] ability to follow and understand simple directions and instructions or perform simple or complex tasks independently." (*Id.* at 14, 560.) Robin also "did not evidence limitation in her ability to maintain

attention and concentration, maintain a regular schedule, or learn new tasks." (*Id.*) Despite the aforementioned findings, however, Dr. Caldwell opined that Robin "evidenced moderate limitation in her ability to make appropriate decisions and relate adequately with others," and "moderate to marked limitations in her ability to appropriately deal with stress." (*Id.*)

Robin takes issue with the ALJ's failure to accept the assessed limitations regarding Robin's ability to make decisions, relate with others, and deal with stress. (Dkt. No. 10 at 19-21.) But a thorough reading of the ALJ's decision and Dr. Caldwell's report reveals that the ALJ properly discounted certain portions of Dr. Caldwell's opinion that were inconsistent with her own report and the clinical findings of record. (Tr. at 14, 558-560.)

Specifically, Dr. Caldwell found moderate limitations relating to Robin's interactions with other people and decision-making, but her examination showed that Robin was cooperative; had appropriate eye contact, overall presentation, and manner of relating; demonstrated adequate social skills; had a "close" relationship with her children and grandchildren; demonstrated intact concentration and attention; had coherent and goal-directed thought processes; and had the ability to

8

complete simple and complex tasks. (*Id.*) In addition, a separate doctor that examined Robin found that her decision-making ability was adequate. (*Id.* at 14, 637.) Similarly, Dr. Caldwell opined that Robin has a moderate-to-marked limitation with respect to dealing with stress, but she also opined that Robin's concentration and attention were intact, her thought processes were coherent and goal-directed, she was well-oriented to her surroundings, her insight and judgment were fair, and she only had mildly impaired memory. (*Id.* at 558-560.) In further support of the ALJ's decision, the Commissioner identifies dozens of treatment notes throughout the record that demonstrate normal psychiatric functioning. (Dkt. No. 12 at 17 (citing Tr. at 261-62, 265-66, 268, 279, 283, 288, 335, 379, 396, 427, 430, 450, 458, 473, 484, 488, 492, 497, 500-01, 505, 509, 512, 514, 518, 520, 525, 705, 708, 711, 718, 728, 730, 744, 747, 751, 755, 760, 765, 769, 770).)

    Accordingly, the ALJ's determinations of mild to no limitations in each of the four broad categories was supported by substantial evidence in the record (as described above), and were adequately analyzed and supported. *See* 20 C.F.R. § 404.1520(a)(e)(4). And, contrary to Robin's contention, at step two, the ALJ properly evaluated the severity of her

9

impairments, and there is substantial evidence to support the ALJ's determination that her mental impairments are non-severe.

## B. RFC Determination

Next, Robin argues that substantial evidence does not support the ALJ's determination that she has the residual functional capacity (RFC) to perform the full range of sedentary work. (Dkt. No. 10 at 21-24.) Specifically, Robin contends that the ALJ erred by failing to properly evaluate Robin's subjective complaints, and by failing to adopt any postural limitations, when determining Robin's RFC. (*Id.*)

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996).

*1. The ALJ's Consideration of Robin's Subjective Complaints*

Robin argues that the ALJ failed to evaluate Robin's subjective

complaints pursuant to the appropriate legal standards. (Dkt. No. 10 at 24-25.) The Commissioner counters, and the court agrees, that this assertion is without merit. (Dkt. No. 12 at 24.)

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96–7p, 1996 WL 374186, at *4 (July 2, 1996).

Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve

11

symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, Robin complained at her administrative hearing of "pain in her foot and heel whenever she has to walk or do anything physical." (Tr. at 15, 51.) Robin explained that she has to do ordinary life activities such as "laundry in the morning because she has swelling later in the day," and she needs a motorized cart to shop. (*Id.* at 15, 51-52.)

The ALJ expressly took these subjective complaints into account and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Robin's subjective statements "concerning the intensity, persistence and limiting effects of these symptoms" were inconsistent with the evidence in the record. (*Id.* at 15-16.) Specifically, the ALJ considered the objective medical evidence since the alleged onset date, the opinions from her treating orthopedist, Dr. Naven Duggal of Syracuse Orthopedic Specialists, and the examining opinion provided by Dr. Kalyani Ganesh, all of which contain substantial evidence that Robin's pain was mild to moderate, that she had normal ankle motion and normal stability, and that she had only mild limitations for walking. (*Id.* at 16-17, 562-67, 629-30, 633, 643, 646, 648, 651, 653, 670-

12

71, 685-700.)

Ultimately, the ALJ explicitly acknowledged consideration of 20 C.F.R. § 404.1529 when making her credibility determination, (Tr. at 15), and it is evident from her thorough discussion that the determination was legally sound. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and the applicable Social Security Rulings as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility); *see also Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that [she] considered the entire evidentiary record." (internal quotation marks, alterations, and citation omitted)); *Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding" (citation omitted)).

Moreover, the ALJ's conclusion that Robin's subjective complaints

13

were not credible, to the extent that they suggested impairment greater than the ability to perform less than the full range of sedentary work contemplated in the ALJ's RFC determination, (Tr. at 15-17), is supported by substantial evidence.  Accordingly, the ALJ did not err in evaluating Robin's subjective complaints.

   2.   *The Treating Physician Rule*

Robin argues that the ALJ improperly declined to consider the postural limitations noted by treating orthopedist Dr.Duggal, and that the ALJ's finding of improvement is not supported by substantial evidence. (Dkt. No. 10 at 21.)  Specifically, Robin takes issue with the ALJ's statement that Dr. Duggal's report "conflicted with [the ALJ's] lay opinion that limitations with bending (stooping) and sitting are 'inconsistent with a foot impairment.'" (*Id.* (quoting Tr. at 17).)  Robin argues that the ALJ's lay opinion is "inadequate to defeat the opinion of a treating physician."  (*Id.*) Robin further asserts that the ALJ improperly failed to consider additional limitations related to her ability to stand, walk, and climb.  (*Id.* at 21-22.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is

14

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id.* at 407 (citation omitted).

    The Commissioner agrees that the "ALJ's justification for rejecting Dr. Duggal's temporary bending (stooping) limitation . . . was not proper,"

15

however, the Commissioner argues that Robin "was not harmed because, like the climbing limitation, none of the jobs identified by the [VE] require bending (stooping)." (Dkt. No. 12 at 20.)

The ALJ's lay opinion is not competent evidence and is therefore unable to serve as a basis to contradict the opinion of a treating physician that Robin had limitations relating to bending and/or sitting. Tr. at 16-17, 691, 693, 695, 697. The Commissioner argues that the ALJ's error with respect to these potential limitations is harmless, because the occupations identified by the vocational expert (VE) do not require bending. (Dkt. No. 12 at 20.) Robin argues that the error was not harmless and was prejudicial to her because "additional limitations would impact the ability to perform sedentary work." (Dkt. No. 10 at 22.) The court agrees with Robin.

While there may have been other reasons in the record to suggest that Robin has no limitations in bending or sitting, the stated justification by the ALJ,[4] is simply insufficient to overcome the treating physician's opinion that she is very limited in bending and moderately limited in sitting. And

---

[4] The Commissioner concedes that the ALJ's lay opinion was her "justification" for rejecting these limitations. (Dkt. No. 12 at 20.)

16

this error is not harmless.

"An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations," and "a complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply." *Mercado v. Berryhill*, No. 1:15-cv-00282, 2017 WL 6275726, at *5 (W.D.N.Y. Dec. 11, 2017) (citing SSR 96-9p, 1996 WL 374185, at *7-*8 (S.S.A. July 2, 1996)) (alterations omitted).

Unlike decisions in this District where the court determined an error to be harmless because the VE found jobs in the national economy that did not appear on its face to require these tasks, the VE in this case did not appear to take bending, stooping, or sitting into account when rendering his decision. *See, e.g.*, *Irene v. Berryhill*, No. 6:18-cv-00038, 2019 WL 1349560, at *24 (N.D.N.Y. Mar. 26, 2019) ("The ALJ's hypothetical question and step-five analysis discussing the VE's testimony indicates that the ALJ did account for postural limitations not expressly mentioned in Plaintiff's RFC."); *Mosley v. Comm'r of Soc. Sec.*, No. 17-CV-6800, 2019 WL 2491664, at *5 (N.D.N.Y. June 14, 2019) ("Indeed, at the hearing, the VE testified that such postural limitations would not affect the hypothetical

17

claimant's ability to perform the jobs she identified.")

Here, because there is no evidence in the record to suggest that the VE considered sitting or bending (stooping) limitations at step five of the sequential analysis, the court agrees with Robin that the ALJ's error was not harmless.  *See Mercado*, 2017 WL 6275726, at *5 (citing *Zabala*, 595 F.3d 402, 410 (2d Cir. 2010) (finding that an error is harmless only if there is "no reasonable likelihood" that proper consideration of the evidence "would have changed the ALJ's determination")).

In sum, until the extent of Robin's limitations are fully and properly considered and articulated in a residual functional capacity analysis, the court "cannot confidently conclude that substantial evidence would support findings that [Robin] can perform the alternative, available work that [the] VE stated [Robin] can still do."  *Oakley v. Colvin*, No. 3:13-cv-679, 2015 WL 1097388, at *13 (N.D.N.Y. Mar. 11, 2015).

Accordingly, the Commissioner's decision is reversed and remanded in order for the Commissioner to properly consider any potential postural limitations related to bending (stooping) and/or sitting, and weigh Dr. Duggal's opinion in accordance with the applicable factors.  The Commissioner should also consider Dr. Duggal's opinions regarding

18

Robin's ability to stand and walk, as it is unclear from the ALJ's decision whether these limitations were discounted and why.[5]  *See* SSR 96-9p, 1996 WL 374185, at *6 ("The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday.").

## C.     **Remaining Findings and Conclusions**

Because Robin's remaining contention—"[t]he ALJ failed to meet the burden at Step 5 in finding work [Robin] could perform at the sedentary exertional level using only the skills acquired from her past work, and the ALJ failed to apply the appropriate legal standards," (Dkt. No. 10 at 11)—may be impacted by the subsequent proceedings directed by the Memorandum-Decision and Order, it would be premature for the court to

---

[5]  As to the ALJ's finding with respect to rejecting limitations related to climbing, Robin erroneously asserts that the ALJ's justification for this decision was based on her lay opinion that climbing is inconsistent with a foot injury.  (Dkt. No. 10 at 21.)  But the actual stated justification for rejecting this limitation was that "[s]tair climbing would not be found in a sedentary residual functional capacity by definition, and she is not precluded from performing it."  (Tr. at 17.)  Indeed, "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work."  SSR 96-9p, 1996 WL 374185, at *7.

19

address it at this juncture. However, after careful review of the record, the court affirms the ALJ's decision with respect to her findings prior to her determination of Robin's RFC, as those findings are supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 5, 2020
Albany, New York

*Gary L. Sharpe*
Gary D. Sharpe
U.S. District Judge